TIMBERLAKE ET AL. *v.* J. R. WATKINS COMPANY.

[No. 20,282. Filed September 9, 1965. Rehearing denied November 1, 1965. Transfer denied April 7, 1966.]

*George S. Rainey,* of Indianapolis, for appellant.

*James J. Farlow,* of Paoli, for appellee.

WICKENS, J.—A motion to dismiss this appeal was filed by appellee. It raises certain questions relating to the preparation of the transcript and it complains of inadequacies in the record. We have examined the record and find that the clerk has certified the transcript as containing that part of the record requested by the praecipe. The certification recites that such record is true, full, complete, and correct in accordance with said praecipe, which is set out in the transcript immediately preceding said certificate. Appellee has made no effort to supply any alleged omissions as permitted in our Supreme Court Rule 2-18. We therefore assume the missing record, if any, is unnecessary for the purposes of this appeal. As to the objections about alterations in the transcript and the implication of a false record, we are satisfied that appellants' attorney has the obligation to see that this work is done, and has so performed, in good faith, a task which requires more than supervisory attention.

> "It is incumbent upon an appellant to bring a proper record to the reviewing court. If a clerk does not understand his duty, appellant's attorneys ought to assist him." Ind. App. Pract. and Proc. in Civil Cases, p. 25, Bobbs-Merrill Co., 1962.

The record in a duly authenticated transcript imports absolute verity. It cannot be aided, varied, or contradicted by extrinsic evidence. *Bozeman et al.* v. *Cale et al.* (1894), 139 Ind. 187, 191, 35 N. E. 828; *Rees et al.* v. *Rees et al.* (1961), 131 Ind. App. 616, 621, 172 N. E. 2d 435.

The affidavits with appellee's motion do not affect the proper certificates to the transcript. We find substantial compliance with the Supreme Court Rules and the motion to dismiss is now overruled.

Appellants were defendants in a suit on two written agreements. Appellee recovered a judgment and appellants assign error in the overruling of their motion for new trial.

Appellant, Everett Timberlake, became a distributor of the products of plaintiff-appellee under a written agreement dated February 19, 1953 wherein he is called "purchaser." Essentially, this contract, on a form prepared by appellee, is a purchase agreement providing for the sale and delivery of company's products at a list price less discount and providing for shipping and payment of same.

Stella Timberlake, the other appellant, signed an agreement bearing the date of June 1, 1952, which recites that in consideration of one dollar and the extension of credit and sale and delivery of merchandise to Everett Timberlake, she (and others no longer parties to this proceeding) absolutely and unconditionally insure, guarantee and promise due payment up to $3000 of all indebtedness to the company now owing or hereafter incurred by said Everett Timberlake. In this instrument, Stella is called "surety."

There was no dispute in the evidence and the court directed the jury to find a verdict for plaintiff-appellee. Everett admitted owing the account for a sum in excess of $3000, and Stella was shown to have executed the agreement mentioned.

Appellants declare that the second agreement is a "suretyship agreement" and is void because, they say, it was executed on Sunday, and that there is "lack of mutuality, want of consideration, failure to create a valid suretyship agreement for the reason that no tripartite relation of principal creditor, principal debtor or obligor, and surety, existed at the time the alleged Suretyship Agreement was signed"; . . .

Questions saved by appellants and urged here were raised by a demurrer and by a motion for new trial. Appellants' nine paragraphs of answer mention other questions which they have expressly waived including any question relating

to instructions except the peremptory instruction for directed verdict, and including as waived are any questions about the status of the account, payment and laches.

Appellants' demurrer and most of appellants' argument on the merits hinge on the question of whether these agreements create a "suretyship" as appellants use this term. Appellants contend that when Stella signed an agreement in 1952 no obligation then existed on the part of Everett moving to appellee. It is insisted that this situation constitutes a failure to establish the tripartite relationship essential to a surety agreement.

We find that similar agreements have been construed by the courts of this State to be those of suretyship. *Hess* v. *J. R. Watkins Medical Co.* (1919), 70 Ind. App. 416, 420, 123 N. E. 440; *Wright* v. *J. R. Watkins Co.* (1928), 86 Ind. App. 695, 698, 159 N. E. 761.

It is a frequent general holding that suretyship involves a tripartite arrangement, that is a principal debtor or obligor and a valid subsisting debt or obligation for which the principal is responsible and an undertaking by the surety to make himself collaterally liable. 26 Ind. Law. Encyc., Suretyship, § 3, p. 461.

No reason has been advanced to show that the agreement in question cannot be more than merely one of suretyship, as that word has been used in a limited or strict sense. We think it is capable of being a contract of suretyship under certain facts (i.e. where a debt already exists) and under a different set of facts, being one of guaranty or one of indemnity. It appears that was the theory on which the trial court proceeded.

Authorities have attempted with some success to differentiate between contracts of suretyship, guaranty, indemnity, and in some instances, insurance. At the same time we have not found any that indicate a contract might not be capable of having the attributes of more than one of these

classifications. In fact the Restatement of the Law of Security, § 82, p. 231 says "the term of 'guaranty' is used in this Restatement as a synonym for suretyship." It further says:

"The possible convenience of having certain terms denote only particular types of surety obligations has resulted in some jurisdictions in the use of 'suretyship' as a general term and 'guaranty' as meaning some particular type of surety contract. In several states 'guaranty' is used as the general term and 'suretyship' with a restricted meaning. There has never been general agreement as to which term is to be the broader and which the narrower. Moreover, if both of the two terms are used with a restricted meaning, they do not suffice to cover even the main types of surety obligations.

"Suretyship obligations are contractual, and the important point of inquiry should be the precise undertaking of the surety and the duty of the principal. The recognition of the existence of different forms of contractual suretyship and the emphasis upon the obligation assumed in a particular case, are of greater significance than the distribution of labels to the various types of contracts."

Following that suggestion, we proceed to ignore the label and place emphasis on the obligation assumed. Stella Timberlake executed an agreement which appellee accepted. This contract specified that if appellee would extend credit to Everett Timberlake, in consideration thereof, she promised to pay up to $3000 of the indebtedness thereafter incurred and owing by Everett. Such an agreement is not contrary to public policy; it contravenes no statute known to us, being in writing it is not within the statute of frauds. In this case it is not being attacked for fraud and no question was properly raised affecting its execution. We conclude with the trial court that it is a valid and enforceable agreement.

The demurrer for deficiency of facts was predicated on the theory that there was no primary obligor when Stella

Timberlake signed the agreement. It was correct to overrule this demurrer as the contract to answer for a subsequently created indebtedness is valid. On the same basis, there is no error in permitting amendment to the complaint. No new cause of action was stated. Also, appellants did not request a continuance because of the change in the pleading and no harm is shown to have resulted by reason of the amendment.

As to the consideration for the contract, the extension of credit to Everett Timberlake constitutes sufficient consideration. Consideration need not be of benefit to the party making the promise. *Pierce* v. *Gas City Lumber Co.* (1937), 104 Ind. App. 234, 242, 7 N. E. 2d 511.

We find no merit in appellants' argument that there is no tripartite relationship here. As we understand that arrangement, all elements are present except an existing obligation which we hold to be unnecessary since after incurred indebtedness is covered by the agreement.

Appellants have also injected the argument that the agreements are invalid because made on Sunday. Since they have favored us with no legal authority for that position we express no view on the validity of contracts which may be made on Sunday. However, the evidence here does not indicate that the contracts were made on that day. There is evidence that signing by appellant Stella Timberlake was done that day, but delivery and acceptance are also factors in the making of a contract and the date of the instrument or the signing by one of the parties falls far short of convincing evidence of the consummation of the execution of a contract. For these reasons we reject the argument that the contract is invalid because "made" on Sunday.

Appellants also argue that the action was not commenced within six years and was therefore barred by the statute of

limitations as to Everett Timberlake. This contention ██ depends on such action being one of the class described as actions "On accounts and contracts not in writing," as set out in Acts 1881 (Spec. Sess.), ch. 38, § 37, p. 240, § 2-601, Burns' 1946 Replacement. It is not an open account. It is an action on a written contract for the payment of money and as such comes within the ten years' limitation pursuant to Acts 1881 (Spec. Sess.), ch. 38, § 38, p. 240, § 2-602, Burns' 1946 Replacement.

Finding no error, the judgment is affirmed.

Prime, P. J., Carson and Faulconer, JJ., concur.

ON PETITION FOR REHEARING.

WICKENS, J.—On petition for rehearing, appellants contend that it is erroneous to say that the action here was not on an open account. We are limited to a decision of the issues. Here the only question presented was whether the action was based upon an account or contract not in writing as referred to in Burns' 1946 Replacement § 2-601, or whether it was an action on a written contract for the payment of money under Clause 5 of Burns' 1946 Replacement § 2-602.

Our holding is expressly limited, as so required, to deciding that this action properly came under the latter statute.

Petition for rehearing denied.

Prime, P. J., Carson and Faulconer, JJ., concur.

NOTE.—Reported in 209 N. E. 2d 909. Rehearing denied 211 N. E. 2d 193.