**Gertrude GLASER, Plaintiff-Appellant,**

**v.**

**INDIANA STATE DEPARTMENT OF PUBLIC WELFARE and County Department of Public Welfare of Vanderburgh County, Defendants-Appellees.**

**No. 82A01–8703–CV–00053.**

Court of Appeals of Indiana, First District.

Sept. 21, 1987.

Rehearing Denied Nov. 6, 1987.

Katherine J. Rybak, Stephen E. Culley, Legal Services Organization of Indiana, Inc., Evansville, for plaintiff-appellant.

Linley E. Pearson, Atty. Gen., Gordon E. White, Jr., Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for defendants-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant, Gertrude Glaser (Glaser), appeals a decision of the Vander-burgh Superior Court upholding the denial of her application for Medicaid by defendant-appellee, Indiana Department of Public Welfare (DPW).

We affirm.

## STATEMENT OF THE FACTS

Glaser is 80 years old and has lived in a nursing home since November 1983. Glaser's niece, Carolyn Clark (Clark), is authorized by a power of attorney to manage her affairs. In December 1984 Clark went to DPW's local office to obtain information on qualifying Glaser for the Medicaid program. Caseworker Nancy Rhodes informed Clark that Glaser was ineligible for Medicaid at that time because her resources considerably exceeded the ceiling amount of $1,500.00, but Clark was told to apply when Glaser's resources fell below the eligibility level. On March 20, 1985, Clark telephoned Rhodes and informed her that Glaser's resources now totaled approximately $1,700.00. Rhodes reiterated that Glaser would not be eligible for Medicaid unless and until her resources were less than $1,500.00. Clark then inquired if she could purchase some nightgowns and robes for Glaser in order to reduce the resources below the eligibility level, but was told she could not. Clark then told Rhodes that, because Clark paid Glaser's nursing home bill a month behind, the resources Glaser had remaining were earmarked to pay the March bill; in reality, Glaser had scant resources. Rhodes replied that, as long as Glaser's account exceeded $1,500.00, she was ineligible for Medicaid. Rhodes then asked if Glaser's current balance included her latest Social Security check. Clark replied that it did, so Rhodes told her to come to the DPW office and apply Glaser for Medicaid. Clark went the next day, March 21, after first obtaining a statement from the bank reflecting the balance in Glaser's account. At the DPW office Clark spoke with caseworker Don Roberts. Roberts noted that the bank statement showed Glaser's account totaled $1,732.50, and he explained to Clark that it would have to be

reduced below the $1,500.00 limit by April 1 in order for Glaser to be eligible beginning in April. Two weeks later, April 4, 1985, Clark telephoned Roberts to review Glaser's situation. The balance in Glaser's account totaled $2,097.50, Clark having deposited Glaser's April Social Security check, in the amount of $365.00, the day before. Roberts explained that, although the April 3 deposit would not affect Glaser's eligibility for April because it occurred after the first of the month, subtracting $365.00 from Glaser's balance still left $1,732.50 in the account, which was above the eligibility limit. Clark told Roberts she was under the impression that March's Social Security check did not affect the eligibility limit. Roberts responded that Clark's impression was incorrect. Glaser's application was denied. In mid-April Clark paid Glaser's March nursing home bill, which reduced Glaser's account balance to $83.07. Glaser's account balance being far below the eligibility limit, her May application was approved and she has been receiving Medicaid ever since.

On April 23, 1985, Clark requested a hearing from DPW to contest the denial of Medicaid assistance. The hearing, before a DPW hearing officer, was held on May 31, 1985. Clark and Roberts testified as related above. The hearing officer sustained the denial of Medicaid assistance on the basis that Glaser's account balance exceeded the $1,500.00 limit on the first day of the month, the date used to determine eligibility. Glaser, through Clark, appealed the decision to the State Board of Public Welfare, which sustained the denial by the hearing officer. Glaser then sought judicial review in the Vanderburgh Superior Court. The trial court, after reviewing the transcript of the proceedings held before the hearing officer, made an order book entry affirming the denial of Medicaid assistance. Glaser then filed her Motion to Correct Error. In overruling the motion the trial court filed Findings of Fact and Conclusions of Law. It found that Roberts had made Clark aware of the requirement that Glaser's account had to be reduced below $1,500.00 by the first of April in order to be eligible. The trial court also

found that, although Clark may have been misinformed regarding the purchasing of clothing for Glaser as a means of reducing the account balance, it concluded that this was not sufficient to estop DPW from denying Medicaid assistance. It also concluded that Glaser's resources were reasonably evaluated and that the hearing officer's findings were sufficient to permit judicial review. From this decision Glaser instituted this appeal.

### ISSUES

Glaser presents the following issues for our review:

   I.  Is DPW estopped from denying Glaser Medicaid assistance for April 1985 because of erroneous information Clark received from a DPW caseworker.

  II.  Does DPW's policy and practice violate the Social Security Act's requirement that Medicaid eligibility standards be reasonable.

 III.  Whether the hearing officer failed to make sufficiently complete and specific findings of fact.

### DISCUSSION AND DECISION

ISSUE I: *Estoppel*

Clark argues DPW is estopped from denying Glaser Medicaid assistance for April 1985. The basis for this argument is Clark's assertion that she did not reduce Glaser's account balance below the eligibility limit because of erroneous information she received from a DPW caseworker.

██ The elements of estoppel are: (1) a representation or concealment of material facts; (2) the representation must have been made with knowledge of the facts; (3) the party to whom it was made must have been ignorant of the matter; (4) it must have been made with the intention that the other party should act upon it; and (5) the other party must have been induced to act upon it to his detriment. *State ex rel. Crooke v. Lugar* (1976), 171 Ind.App. 60, 354 N.E.2d 755, *trans. denied;* 12 *I.L.E. Estoppel* § 21 (1959).

Clark contends that DPW caseworker Nancy Rhodes informed her she could not reduce Glaser's account balance below the $1,500.00 eligibility limit by purchasing clothing for Glaser. This information was incorrect, and, in reliance thereon, Clark was prevented from making Glaser eligible for Medicaid assistance by the first day of April 1985. Clark cites *Pond v. Dept. of Health and Rehabilitative Services* (1987), Fla.App., 503 So.2d 1330 as support.

In *Pond*, an applicant for public assistance explained her situation to a caseworker during an eligibility interview. The caseworker failed to disclose to the applicant an arrangement that would have made the applicant eligible, because it was the welfare department's practice not to disclose to applicants a policy that may enable them to qualify for benefits. In reversing the denial of benefits, the court held where a caseworker is presented with specific and revealing information regarding an applicant's eligibility for benefits, the caseworker has an affirmative duty to inform the applicant at least orally of the conditions relevant to eligibility. 503 So.2d at 1332–33. The court stated that it was not directing the welfare department to create eligibility for applicants; it just required that applicants be informed of the eligibility requirements. The *Pond* court also emphasized that its holding was "narrowly limited to the peculiar circumstances existing in the instant case." *Id.* at 1332.

We believe *Pond* is distinguishable from the case at bar. Unlike the applicant in *Pond*, who was not informed of the conditions for eligibility, Clark was told on three different occasions of the need to reduce Glaser's resources below $1,500.00. While Clark may have been given misinformation by caseworker Rhodes concerning the purchase of clothing, the record shows that caseworker Roberts corrected the false impression. In his testimony before the hearing officer Roberts stated:

She [Clark] then came back in on March 21, 1985 and I, Don Roberts, uh, talked to her at that time, uh, I explained to her again the circumstances on Medicaid requirements and discussed the resources with her. I explained to her that, uh, in order for Medicaid to begin, uh, covering any expenses at all in April that she would have to reduce her resources down below the allowable limit of $1,500 as of April 1 in order for eligibility.

*Record* at 152. As the trial court concluded, although Clark may have received misinformation regarding one avenue of reducing Glaser's resources, this is not sufficient to estop DPW from denying Medicaid assistance.

In addition to the above analysis, authority exists for resolving this issue adversely to Glaser. In *Gressley v. Califano* (7th Cir.1979), 609 F.2d 1265, a case that originated in Indiana, it was stated that generally, reliance on misinformation by a government employee does not provide a basis for an estoppel. In *Gressley* an applicant was denied disability benefits because of misinformation regarding the eligibility requirements. The federal district court applied the doctrine of estoppel and granted summary judgment in favor of the applicant. In reversing, the Seventh Circuit held that agencies and courts have no discretion but to limit the payment of benefits to those statutorily entitled to them. *Id.* at 1268. The court elaborated on the general rule, stating:

The government could scarcely function if it were bound by its employees' unauthorized representations. Where a party claims entitlement to benefits under federal statutes and lawfully promulgated regulations, that party must satisfy the requirements imposed by Congress. Even detrimental reliance on misinformation obtained from a seemingly authorized government agent will not excuse a failure to quality for the benefits under the relevant statutes and regulations.

*Id.* at 1267 (quoting *Goldberg v. Weinberger* (2nd Cir.1976), 546 F.2d 477, 481); *see also Turner Transportation, Inc. v. Ind. Employment Security Bd.* (1983), Ind.App., 448 N.E.2d 300 (court, expressing concern over the loss of public funds, declined to apply estoppel even though misin-

formation was supplied by state tax official).

In light of the foregoing, DPW is not estopped from denying Glaser Medicaid assistance for April 1985.

## ISSUE II: *Reasonable Standard*

Glaser contends that DPW's policy and practice of evaluating an applicant's resources to determine eligibility is unreasonable, because she was denied Medicaid assistance even though her account balance was far below the eligibility limit.

A federal statute requires that each state Medicaid plan include reasonable standards for determining eligibility, including the reasonable evaluation of an applicant's income and resources. 42 U.S.C.A. § 1396a(a)(17)(C). Another statute requires that eligibility be determined "in a manner consistent with simplicity of administration and the best interests of the recipients." 42 U.S.C.A. § 1396a(a)(19). Achieving these twin goals obviously requires a balancing of interests.

DPW uses the first-day-of-the-month rule to determine an applicant's eligibility for Medicaid assistance. An applicant's resources are evaluated as of the first date of the month in which the applicant seeks eligibility; if the applicant's resources exceed the eligibility limit on the first day of the month, the applicant is ineligible for that month.

The genesis of this rule is found at 470 IAC 9.1–3–1(a)(1). As applicable to Glaser's situation, it provides:

> (a) An applicant for or recipient of medical assistance is ineligible for any month in which the total equity value of all non-exempt personal property owned by him and his spouse or parent(s) if he is under age eighteen (18) exceeds the applicable limitation on the first day of the month, as set forth below:
>
> (1) $1,500 for an unmarried applicant or recipient, or for an applicant or recipient who is separated from his spouse for reasons other than the institutionalization of the spouse.
>
> . . . .

DPW's rule is consistent with its federal counterpart, 20 CFR § 416.1207(a), which provides:

> *General.* Resources determinations are made as of the first moment of the month. A resource determination is based on what assets an individual has, what their values are, and whether or not they are excluded as of the first moment of the month.

■ Glaser does not claim that the first-day-of-the-month rule is inherently unreasonable, but she does complain that it should not be applied in a vacuum. Glaser acknowledges that, on the first day of April 1985, her resources exceeded the $1,500.00 eligibility limit. She argues that, because nearly all her resources were earmarked to pay bills she incurred the previous month, it was unreasonable to consider those funds in determining her eligibility.

Glaser's argument was addressed and rejected in *Mattingly by Mattingly v. Heckler* (7th Cir.1986), 784 F.2d 258, also a case with an Indiana origin. In *Mattingly,* a suit was brought challenging DPW's use of a flat maintenance allowance to provide for the needs of non-institutionalized spouses of institutionalized Medicaid recipients. Mattingly claimed the use of a flat maintenance allowance was arbitrary and capricious, and an individual factual determination of each recipient's situation would be preferable. In affirming the judgment of the federal district court, the Seventh Circuit held that "individual fact-finding procedures would dissipate the limited resources of the Medicaid program in the increased administrative expense of providing such procedures, thus reducing the amount of funds available to Medicaid recipients...." *Id.* at 268.

Clark was informed on three separate occasions of the requirement to lower Glaser's resources below the $1,500.00 limit by April 1st in order for her to be eligible for Medicaid. Clark knew that bills had been incurred in March, and even knew the exact amount of the March nursing home bill. She does not claim that anything prevented her from paying the nursing home bill before the first of April. Although we are

sympathetic to the plight of applicants who must traverse the maze of social service legislation, we are also cognizant of DPW's monumental task of distributing public assistance benefits. 42 U.S.C.A. § 1396a(a)(19) contemplates a balancing of the twin goals of simplicity of administration and the best interests of recipients. Courts are limited in reviewing the action of legislative agencies and must give deference to their expertise. *Aaron v. Review Bd. of Indiana* (1981), Ind.App., 416 N.E.2d 125. Therefore, we hold that DPW's first-day-of-the-month rule is reasonable in its application.

ISSUE III: *Sufficient Findings*

Glaser contends the hearing officer failed to make a finding of fact on a material issue, namely, her claim that DPW should be estopped from denying her Medicaid. Therefore, she requests that this cause be remanded for such a finding.

■ Findings entered by an administrative agency must be sufficient to inform the parties of the evidentiary bases upon which the ultimate findings rest, and to permit this court to engage in meaningful review. *Sloan v. Review Bd. of Indiana Employment Security Div.* (1983), Ind. App., 444 N.E.2d 862. However, there is no requirement that the findings discuss in detail each matter raised during the proceedings. *Hale v. Review Bd. of Indiana Employment Security Div.* (1983), Ind. App., 454 N.E.2d 882.

■ The hearing officer sustained the denial of Medicaid assistance because Glaser's resources exceeded the $1,500.00 eligibility limit as of the first of April 1985. Implicit in his decision is the finding that DPW was not estopped from denying Glaser Medicaid assistance, although an express finding to that effect would have been preferable. As did the claimants in *Hale, supra,* and *Sloan, supra,* Glaser has confused the procedural issue of whether the findings are adequate to advise, with the substantive issues of whether they are sustained by the evidence or lead as a matter of law to a conclusion contrary to that reached by the hearing officer. Given our resolution of Issue I, regarding estop-

pel, the findings in the instant case are not deficient.

Accordingly, for the above reasons, the judgment of the trial court is in all things affirmed.

Judgment affirmed.

ROBERTSON and CONOVER, JJ., concur.