STATE of Indiana, FAMILY AND SOCIAL SERVICES ADMINISTRATION and State of Indiana, Division of Family and Children, Appellants–Defendants,

v.

James THRUSH, Authorized Representative of Goldie Thrush, Deceased Spouse, Appellee–Plaintiff.

No. 85A05–9606–CV–240.

Court of Appeals of Indiana.

Jan. 30, 1998.

---

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellants–Defendants.

James A. Federoff, Craig R. Patterson, Beckman, Lawson, Sandler, Snyder & Federoff, L.L.P., Fort Wayne, for Appellee–Plaintiff.

## OPINION

RUCKER, Judge.

In this dispute concerning Medicaid eligibility the Indiana Family and Social Services Administration (FSSA) appeals the trial court's judgment in favor of James Thrush. We address the following restated issue: did the trial court err in rejecting FSSA's calculation of Thrush's Medicaid resource spend down liability. We reverse.

The facts show that Goldie Thrush was hospitalized from February 1991 to May 1991 at which time she died. Facing medical bills exceeding $180,000.00 her husband, James Thrush, filed an application with the Wabash County Office of Family and Children (County) seeking Medicaid assistance. After a series of administrative delays not relevant to this appeal, County advised Thrush that his assets exceeded Medicaid eligibility limits. Accordingly, Thrush was required to "spend down" his excess resources in order to qualify for Medicaid assistance. County calculated the amount of the spend down at $38,674.94. Although acknowledging that his assets exceeded the limit, Thrush nonetheless disputed County's calculations. He appealed County's decision to an Administrative Law Judge (ALJ). Following an evidentiary hearing the ALJ affirmed County's decision which was later adopted by FSSA. Thrush then filed a petition for judicial review in the Wabash Circuit Court. After a hearing the trial court affirmed FSSA's determination as to the month of February, but concluded FSSA erred in its calculation of Thrush's spend down amounts for the months of March, April, and May. Vacating FSSA's decision, the trial court remanded the matter for further proceedings. This appeal followed.

■ The purpose of the Medicaid program is to provide medical assistance to needy persons whose income and resources are insufficient to meet the expenses of health care. 42 U.S.C. § 1396; *Sullivan v.*

*Day,* 681 N.E.2d 713, 715 (Ind.1997). The program operates through a combined scheme of state and federal statutory and regulatory authority. *See* 42 U.S.C. § 1396a; I.C. § 12–15–1–1; *Family & Social Servs. Admin. v. Calvert,* 672 N.E.2d 488, 493 (Ind. Ct.App.1996), *trans. denied.* States participating in the Medicaid program must establish reasonable standards for determining eligibility, including the reasonable evaluation of an applicant's income and resources. 42 U.S.C. § 1396a(a)(17); *Glaser v. Department of Pub. Welfare,* 512 N.E.2d 1128, 1132 (Ind. Ct.App.1987), *trans. denied.* To qualify for Medicaid, an applicant must meet both an income eligibility test and a resources eligibility test; if either the applicant's income or the value of the applicant's resources is too high, then the applicant does not qualify for Medicaid. *Roloff v. Sullivan,* 975 F.2d 333, 337 (7th Cir.1992).

Indiana calculates resources pursuant to the "first day of the month" rule as set forth in 405 IAC 2–3–15 which provides in relevant part:

> (a) An applicant or recipient is ineligible for medical assistance for any month in which the total equity value of all nonexempt personal property exceeds the applicable limitation, set forth below, on the first day of the month:....

Under the Code an applicant's financial resources are evaluated as of the first date of the month for which Medicaid assistance is sought. If the applicant's financial resources exceed the eligibility limit on the first day of the month, then the applicant is not eligible for that month. *Glaser,* 512 N.E.2d at 1132. However, an applicant whose financial resources exceed the limit on the first day of month may still qualify for Medicaid assistance through a procedure commonly referred to as "resource spend down." [1] The term "spend down" is somewhat misleading because although an applicant may, he is not

actually required, to spend or to liquidate any of his assets. Rather, excess resources may be offset against incurred but unpaid medical bills. *Indiana Dep't of Pub. Welfare v. Payne,* 622 N.E.2d 461 (Ind.1993), *reh'g denied.*

Applying the first day of the month rule, FSSA calculated the amount Thrush was required to spend down each month. It did so by determining Thrush's available resources on the first day of each month and subtracting the resource limit. This left the excess amount of Thrush's available resources. For example on February 1, 1991, Thrush's combined non-exempt resources totaled $34,415.94. The applicable Medicaid resource limit was $19,069.00. Thus, for the month of February Thrush exceeded the resource limit by $15,346.94. Therefore Thrush was required to spend down that amount in order to qualify for Medicaid for the month of February. Stated differently, a portion of Thrush's incurred but unpaid medical expenses could be offset by $15,346.94. Medicaid assistance would then apply to the remainder of Thrush's medical expenses for that month. For each of the four relevant months, FSSA concluded that Thrush's non-exempt resources exceeded the $19,069.00 resource limit. According to FSSA, on March 1, 1991 Thrush exceeded the limit by $8,605.00; on April 1, 1991 he exceeded the limit by 7,346.00, and on May 1, 1991 he exceeded the limit by $7,377.00. Combining the foregoing amounts, FSSA determined that Thrush would have to spend down $38,674.94 in order to qualify for Medicaid assistance.

In proceedings before the trial court Thrush challenged the first day of the month rule as unreasonable, arbitrary, capricious and otherwise not according to law.[2] In *Glaser v. Department of Pub. Welfare,* 512 N.E.2d 1128 (Ind.Ct.App.1987), *trans. denied,* DPW denied Medicaid assistance to

---

**1.** A similar spend down provision applies in the case of a Medicaid applicant whose income exceeds the Medicaid income limitation. Here, however, Thrush's resources rather than income are at issue.

**2.** Thrush advanced the same argument in his Brief of Appellee. However, at oral argument

Thrush abandoned this view and maintained instead that the first day of the month rule was unreasonable only as applied to the facts in this case. We address the issue here because the trial court's order implied that the rule itself is inherently unreasonable, arbitrary, or capricious.

eighty year old Gertrude Glaser because her resources exceeded the eligibility limits. Glaser sought judicial review of DPW's decision which the trial court affirmed. On appeal to this court Glaser did not claim that the first day of the month rule was inherently unreasonable, but rather was unreasonable as applied to her. More specifically Glaser acknowledged that her resources exceeded the eligibility limit, but maintained that they were earmarked to pay bills she had incurred the previous month and therefore it was unreasonable to consider those funds in determining her Medicaid eligibility. We disagreed and affirmed the trial court. In so doing we implicitly acknowledged the reasonableness of the first day of the month rule and explicitly held that the rule was reasonable as applied to Glaser. *Id.* at 1133. We now explicitly hold that the first day of the month rule is not inherently unreasonable, arbitrary, capricious, or otherwise contrary to law. Our conclusion is consistent with *Stockton v. Department of Pub. Welfare,* 533 N.E.2d 148, 151 (Ind.Ct.App.1988) ("The 'first day of the month' rule is a properly promulgated state regulation based upon [the Tax Equity and Fiscal Responsibility Act of 1982] as required by [the U.S. Department of Health and Human Services]"), as well as *Roloff v. Sullivan,* 975 F.2d 333, 342 (7th Cir.1992) (use of "first day of the month" rule does not violate federal statute requiring reasonable evaluation of Medicaid applicants' income and resources).

Pointing out that his total combined assets have never exceeded $34,415.94 Thrush argues the first day of the month rule is unreasonable as applied to him because it requires that he spend down $38,674.94 which is over $4,000.00 more than he even owns. The trial court agreed and found that FSSA was double counting Thrush's assets. Among other things the trial court concluded that although FSSA may count Thrush's resources for February 1991, the first month of eligibility, it could not count those same resources in subsequent months. Accordingly the trial court vacated that part of FSSA's decision requiring Thrush to spend down resources for the months of March, April, and May of 1991. FSSA complains the trial court erred in so doing because the first day of the month rule

requires an assessment of the applicant's resources at the beginning of each month. And where, as here, an applicant retains the same resources month after month they must be included when determining Medicaid eligibility.

▬▬ In reviewing the decision of an administrative agency, this court stands in the same position as the trial court. *Family & Social Servs. Admin. v. Marion Gen. Hosp.,* 677 N.E.2d 1122, 1123 (Ind.Ct.App. 1997), *trans. denied.* We are limited to determining whether the agency action is:

(1) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) Contrary to constitutional right, power, privilege, or immunity;

(3) In excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) Without observance of procedure required by law; or

(5) Unsupported by substantial evidence.

Ind.Code § 4–21.5–5–14(d); *Family & Social Servs. Admin. v. Calvert,* 672 N.E.2d 488, 492–93 (Ind.Ct.App.1996), *trans. denied.* We neither reweigh the evidence nor substitute our judgment on factual matters for that of the agency. *Calvert,* 672 N.E.2d at 492. However deference is not granted to an agency's conclusions of law. *Id.* at 492.

▬▬ When an applicant seeks Medicaid assistance for a given month and "spends down" his excess resources by liquidating them, the application of the first day of the month rule becomes a rather simple and mechanical matter. Once the resources are liquidated, they no longer exist and obviously cannot be included in any calculation if assistance is sought in subsequent months. It is clear however that when taking advantage of the eligibility spend down procedure an applicant is not required to liquidate his assets. Rather, he may have the excess resources offset against incurred but unpaid medical bills. *Payne,* 622 N.E.2d 461. Basically this is a bookkeeping procedure; the asset technically still exists and remains in the applicant's possession. Thrush essentially argues

there is no reason in logic or common sense to treat an existing offset asset any differently than a non-existing liquidated asset. According to Thrush if the asset does not exist because it is liquidated, then the asset should be deemed not to exist when it is offset by a bookkeeping procedure. In both instances, Thrush maintains, the asset should not be used in determining eligibility for subsequent months. Employing the first day of the month rule otherwise, the argument continues, punishes the applicant who holds on to a modest asset such as a life insurance policy while rewarding the applicant who cashes in the policy and spends the money on non-essential items.[3]

Thrush's argument is facially appealing, but misses the mark. The medical bills in this case exceed $180,000.00. The question raised is: to whom will the responsibility fall for paying those bills? If Thrush were eligible, then Medicaid would pay the entire bill. However, because Thrush's resources exceed the limit, Medicaid will pay only that portion of the bill which is less the spend down amount. The remainder of the bill is Thrush's responsibility. Stated differently Thrush is not totally ineligible to receive Medicaid benefits. Rather, he is ineligible to have his entire medical expenses paid by Medicaid. Hence, although as a matter of arithmetic Thrush's spend down amount exceeds the total value of his combined assets, as a practical matter Thrush is not harmed. Medicaid simply will not be responsible for that portion of Thrush's medical expenses which Thrush himself could have paid had he chosen to do so.

The Medicaid program is designed for those who are truly needy. *See Sullivan,* 681 N.E.2d 713. We do not imply by this statement that Thrush has no need for Medicaid assistance. To be sure Thrush is not a wealthy person. However, applying the first day of the month rule as Thrush suggests, by taking the assets off the table after the first month of eligibility has been calculated and not counting them again, would allow a wealthy person with substantial assets to receive the benefits of the Medicaid program. As for the argument that the rule as applied punishes applicants who hold on to assets while rewarding applicants who liquidate assets and spend the money on non-essential items, we observe that the spend down provision is designed to encourage applicants to use available resources to pay outstanding medical obligations with Medicaid paying only the remaining balance. *See Roloff,* 975 F.2d 333, 342 n. 16. Although an enterprising person can indeed manipulate the system, this is true whether or not Medicaid coverage is involved.

FSSA applied the first day of the month rule consistent with underlying purposes of the Medicaid program. The rule is not inherently unreasonable, nor did FSSA apply the rule to Thrush in a manner that was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. The trial court's judgment to the contrary is erroneous and must be reversed.

Judgment reversed.

FRIEDLANDER and DARDEN, JJ., concur.

---

**3.** The record shows that in computing Thrush's Medicaid eligibility, FSSA included two Certificates of Deposit valued at $5,000.00 apiece and the cash surrender value of five life insurance policies.